UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**JAMES EAKES**                                                                                               **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 5:21-cv-36-BJB**

**JOHN CAUDILL**                                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

James Eakes brought a legal-malpractice claim against his former criminal-defense lawyer, John Caudill, who has moved to dismiss the lawsuit. DN 22. Because Eakes's conviction hasn't been exonerated, however, his suit against Caudill must be dismissed.

### I. ALLEGATIONS

Eakes's claims against Caudill arise from Caudill's representation of Eakes in a federal criminal case in the Paducah Division of this Court: *United States v. Eakes*, 5:18-cr-23-TBR.[1]

Eakes previously worked as a corrections officer at the Fulton County Detention Center in Kentucky. A federal grand jury indicted him on a charge of depriving an inmate of the right to be free from cruel and unusual punishment.[2] *United States v. Eakes*, DN 1. The Government accused Eakes of assaulting and injuring the inmate with a dangerous weapon. On April 29,

---

[1] The Court takes judicial notice of the records of this Court's proceedings in Eakes's criminal case. *See United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977) ("[T]aking judicial notice of our own court's record is wholly consistent with the provisions of Rule 201 of the Federal Rules of Evidence[.]"); *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (E.D. Mich. 2018) ("The Court takes judicial notice, as it is permitted to do in resolving the instant motions, of its own docket[.]").

[2] In its decision affirming Eakes's conviction, the Sixth Circuit Court of Appeals summarized the case against Eakes:

> Body-camera footage showed him tasing the inmate three times because the inmate had cursed at Mr. Eakes from behind a locked cell door. The inmate was unarmed and naked except for a thick smock worn by suicidal prisoners. And after the first tasing, he was slumped helpless against his cell wall, posing no threat to himself or others.

*United States v Eakes*, DN 94, p. 1.

2019, the jury found Eakes guilty. *Id.*, DN 37. Eakes appealed, and the Sixth Circuit Court of Appeals affirmed (No. 20-5219). *Id.*, DNs 78, 94.

Then Eakes filed this lawsuit in the U.S. District Court for the Northern District of Texas, Dallas Division, while he was a federal inmate at the Federal Correctional Institution in Seagoville, Texas. DN 1. That Court determined this Court was the proper venue, and transferred the lawsuit here. DN 9. The Court reviewed the Amended Complaint (DN 12) on initial screening under 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Invoking diversity jurisdiction, DN 12, p. 7, Eakes alleged that he brought his civil complaint against Caudill for:

> LEGAL MALPRACTICE, including, but no[t] limited to; Malfeasance, Misfeasance, Missed Opportunity, Negligence, and Misrepresentation as Criminal Counsel for the Defense in a previously adjudicated Criminal Case: 5:18-CR-00023, to which, John Caudill, as the named Defendant in this CIVIL COMPLAINT, Breached his Fiduciary Duty, committed Fraud, and violated Deceptive Trade Practices resulting in excessive Damages to the Plaintiff.

*Id.* at 7. Eakes alleged that Caudill misrepresented to him his credentials, experience, and his relationship to the judge and the prosecutor. *Id.* at 4-7, 9. Eakes also alleged that Caudill failed to allow him to testify, did not produce any expert testimony, and failed to bring forth all of the evidence at trial. *Id.* According to Eakes, Caudill breached his fiduciary duty to Eakes when Caudill required Eakes to deliver $15,000 cash to him at a bar. *Id.* at 9-10. Eakes further alleged that he brought Caudill the $15,000 "with expectations of [a] defense strategy" for his trial, and that he was "assured that all such defense strategies would be met," but that "none of the agreed upon conditions were satisfied." *Id.*

The Amended Complaint further states that Eakes's "injury claim originated in Kentucky." *Id*. at 4. It refers, however, to Kentucky law and Texas's Business and Commerce Code and Deceptive Trade Practices Act. *Id*. at 5; *see also, e.g., id*. at 10.

## II. MOTION TO DISMISS

Caudill's motion to dismiss argues that he is entitled to have the lawsuit against him dismissed under Kentucky law on three bases. First, he argues that this lawsuit is time-barred under Kentucky's one-year statute of limitations for legal malpractice claims. According to the motion, Caudill ceased representing Eakes on February 14, 2020, DN 22, p. 1, but a summons was not issued for Caudill in this case until November 10, 2021. *Id*. at 2. Caudill therefore contends that Eakes's lawsuit against him is time-barred under Ky. Rev. Stat. § 413.250, which provides that a lawsuit commences "'on the date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action.'" *Id*. Second, because in cases alleging professional negligence, "expert testimony is typically required to establish the standard of care," Caudill argues, dismissal is warranted because Eakes has failed to identify such an expert. *Id*. Third, Caudill argues that because Eakes cannot establish that he is innocent of the charges against him and cannot show that he was exonerated from his conviction and sentence *via* post-conviction relief, he is estopped under Kentucky law from bringing a claim for malpractice. *Id*. at 2-3.

In response, Eakes argues that "under the auspices of 'Continued Violation'" each day that he suffers "reset[s]" the one-year statute of limitations period, rendering his lawsuit timely. DN 29, pp. 1-2. Eakes further argues that he has "prepared an extensive list of expert witnesses including TASER training and protocol experts" regarding his tasering of the prisoner. *Id*. at 3. He does not, however, name any purported experts. He also asserts that he is prepared to bring

"certain individuals" who were present in the courtroom during the trial "to provide a perspective of [Caudill's] . . . many missed . . . opportunities." *Id*. As to Caudill's third defense, Eakes argues, essentially, that had Caudill not committed legal malpractice during the trial, he would have portrayed Eakes as "'actually innocent' despite the factual guilt associated with tasering a prisoner." *Id*. at 4.

In reply, Caudill reiterates his untimeliness and expert-testimony arguments and contends that Eakes has not put forth any proof that he has been exonerated or authority that this suit may nevertheless proceed. DN 30, pp. 1-3.

### A. Motion-to-dismiss standard

Rule 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addressing the motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all "well-pled factual allegations" in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). In addition, "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B. Analysis

*1. Choice of law*

Eakes cited both Kentucky and Texas law in the Amended Complaint (DN 12), without taking a position as to which one applies. Caudill's motion to dismiss (DN 22) assumes without discussion that Kentucky law applies. Eakes's response (DN 29) does not that assumption. And, in response to the Court's order for Eakes to show cause (DN 14) whether diversity jurisdiction exists, Eakes explained that he had been domiciled in Tennessee before his arrest and that his presence in Texas when he filed his lawsuit was solely due to being incarcerated there. DN 15, p. 2.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state." *Stone Surgical, LLC v. Stryker Corp.*, No. 16-1434, 2017 WL 2263010 at *3 (6th Cir. May 24, 2017) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "As [the Sixth Circuit has] noted on numerous occasions, Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017) (collecting cases). The choice-of-law analysis matters only if a conflict exists between the laws of the two states at issue, however. *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)). If not, the same rule of decision will apply regardless of which state's law supplies that rule. *See Carbonic Prod. Co. v. Welding & Cutting Supply Co., Subsidiary of Union Carbide*, 823 F.2d 553 (6th Cir. 1987) ("conflict-of-laws rules are appealed to only when a difference in law will make a difference to the outcome").

Kentucky's "Exoneration Rule" precludes relief if a plaintiff "has not been exonerated of his convictions through post-conviction proceedings." *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 141 (Ky. 2018). Texas follows a similar Exoneration Rule, allowing a legal-malpractice claim against a criminal-defense attorney "only if [the criminal defendants] have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995); *Cannon v. James*, No. 5:09-CV-132, 2010 WL 2432354, at *1 (E.D. Tex. May 27, 2010) (because the "plaintiff has not alleged that he has been exonerated, he cannot state a claim for legal malpractice."), *report and recommendation adopted*, No. 5:09-CV-132, 2010 WL 2430764 (E.D. Tex. June 15, 2010); *see also Huerta v. Shein*, 498 F. App'x 422, 425 (5th Cir. 2012) (discussing *Peeler*). Because both Kentucky and Texas require legal-malpractice plaintiffs like Eakes to (at a minimum) demonstrate exoneration through postconviction relief, which Eakes cannot do, it is unnecessary to conduct a choice-of-law analysis regarding Plaintiff's legal-malpractice claim.[3]

Even were the Court to consider Caudill's other asserted bases for his motion to dismiss, however, Kentucky law would apply. A claim of legal malpractice is a tort action. *See, e.g.*, *EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. CV 15-146, 2018 WL 1996797, at *6-7 (E.D. Ky. Apr. 27, 2018). Kentucky tort law will apply "if there are significant contacts—not necessarily the most significant contacts—with Kentucky." *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972); *see also Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) (describing the "any significant contacts" test applicable to Kentucky tort actions).

---

[3] Unlike some states, Kentucky doesn't require plaintiffs to "establish actual innocence" in order to recover. *Lawrence*, 567 S.W.3d at 140. This is arguably the rule followed in Texas. *See Peeler v. Hughes & Luce*, 868 S.W.2d 823, 832 (Tex. App. 1993), *aff'd*, 909 S.W.2d 494 (Tex. 1995)). The potential existence of a second hurdle doesn't matter here because Eakes can't clear the first one. So any difference between Kentucky and Texas law on this point doesn't affect the decision or require a more thorough conflicts analysis.

6

This lawsuit has significant contacts with Kentucky. Caudill is a citizen of Kentucky. Eakes worked in Kentucky. The underlying criminal litigation was filed, tried, and decided in Kentucky. *See Sawaf v. Alred*, No. 15-cv-108, 2016 WL 2755455, at *2 (E.D. Ky. May 11, 2016) (underlying criminal case on which claims rested "was indicted and tried in Kentucky"). And Eakes offers no reason why the law of Texas, the state he happened to be incarcerated in *after* his conviction, would apply. "Given the strong preference for applying Kentucky law and the significant contacts with the state, Kentucky law applies to this action." *EQT Prod. Co.*, 2018 WL 1996797, at *7 (footnote omitted).

### 2. Exoneration Rule

Caudill is correct that because Eakes's conviction still stands, he cannot bring this malpractice action due to Kentucky's Exoneration Rule.

In *Lawrence*, the Kentucky Supreme Court "follow[ed] the lead of the Court of Appeals and most of our sister-state jurisdictions in adopting the Exoneration Rule." 567 S.W.3d at 135. It explained that "[t]he Exoneration Rule provides that a criminal defense attorney may not be sued for legal malpractice in a case resulting in the conviction of his or her client *unless the client has been exonerated by direct appeal or upon post-conviction relief.*" *Id.* (emphasis added). The *Lawrence* Court also made clear that the Exoneration Rule applies whether the criminal defendant was convicted by a jury or pleaded guilty. *Id.* at 139 ("[N]o sound reason exists to apply one rule for criminal defendants who plead guilty and a different rule for those found guilty beyond a reasonable doubt by a jury.").

Under *Lawrence*,

> [T]o survive a motion to dismiss for failure to state a claim in a professional malpractice case against a criminal defense attorney, the convicted client must plead in his complaint that he has been exonerated of the underlying criminal conviction. He or she need not prove actual innocence, but they also may not rely

solely upon a claim of actual innocence in the absence of an exonerating court decision through appeal or post-conviction order.

*Id*. at 141.[4]

Eakes does not plead that his criminal conviction has been exonerated. Nor does he contest Caudill's argument that it hasn't been exonerated. A review of his criminal proceedings in this Court, moreover, shows that it has not. Eakes's protestation that he is actually innocent is to no avail given this lack of "an exonerating court decision through appeal or post-conviction order." *See id.* Eakes thus fails to state a claim for legal malpractice against Caudill.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** the motion to dismiss (DN 22). The Court will by separate Order dismiss this lawsuit without prejudice.

Date: February 13, 2023

Benjamin Beaton, District Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of record
B213.009

---

[4] Relevant to Caudill's limitations defense, the *Lawrence* Court also held that "the statute of limitations on the legal malpractice claim does not begin to run until the post-conviction exoneration occurs." *Id*. This means a premature legal-malpractice claim should be dismissed without prejudice. *Id*.

8